GOULD S. CLARK AND OTHERS *vs.* THE TOWN OF ·MIDDLE-
BURY.

A petition to the Superior Court for a highway prayed for it to be laid out in
two sections, one from a point in an old highway to a point in another high-
way, and the other from another point in the latter highway to a point in a
third highway. The committee laid out the road on one of the sections and
not on the other. Held that they had power to do so.

A road as laid out need not be precisely identical as to its location with the one
prayed for. If it is substantially the same it is sufficient.

A deviation of a few rods one way or the other in a country road is of no
importance.

The termini of a road are of most importance in determining the identity.

Selectmen, in cases within their exclusive jurisdiction, have the same power
with regard to laying out a part of a road asked for, and of deviating from
the line proposed, that a committee of the court would have.

PETITION for the laying out of a highway; brought to the
Superior Court in New Haven County.

The petition described the highway prayed for as follows:
A new highway in said town of Middlebury commencing at
a point in the old road leading from the city of Waterbury to
the center of said town of Middlebury about nine hundred
feet westerly from the bridge on said old road over Hop brook,
thence running northerly from the above mentioned point in
said old road through a piece of woods to a point in the Break
Neck road just southerly of William Tyler's barn; thence
northwesterly from a certain other point in said Break Neck
road, about thirteen hundred feet westerly of the last above
mentioned point, near said Tyler's barn, three-fourths of a
mile, more or less, to a point in the old road over Break Neck
Hill, about eighteen hundred feet westerly from the dwelling-
house of David Tyler; as will more fully appear by reference
to a certain survey thereof, made part of said application,
together with a map accompanying the same.

The petition alleged that the petitioners had applied to the
selectmen of the town of Middlebury to lay out the sections
of highway described, and that they had refused to lay them
out.

The committee of the court, to whom the matter was

referred, reported to the court that they found the first section prayed for not to be of common convenience and necessity, but that the other section was so, and that they had laid out the highway over the same—giving a survey of the route, by which it appeared that they had in many places deviated from the exact road-line of the highway proposed, in one place to the extent of twelve rods from the line of the same.

The respondents remonstrated against the acceptance of the report. The court found the following facts·

The committee, pursuant to notice to that effect, proceeded to hear and try the matters submitted to them. The petition-ers and their counsel presented to them a certain map or plan of the proposed highway, which map is referred to in the petition and made part thereof, as well as a certain profile, showing the altitudes, grades and depressions of the proposed highway, the map also showing terminal points of each section of the proposed road and all the intermediate points and angles, as well as every course and distance. And the committee, during the trial, as well as the petitioners and respondents, were invited to view the line of the proposed road, which the petitioners had defined by stakes and monuments, in accord-ance with the survey and profile, and no other or different line of the proposed new road was pointed out to the commit-tee or to the respondents before or during the trial. And the respondents prepared their defense to the proposed route, and offered evidence to the committee to prove, and claimed that they had proved, that considering the grades, courses and distances of the proposed road, as indicated by the map and profile, and also the damage to the owners of the land over which the proposed road passed, the same was impracti-cable and ought not to be built, and was not of common con-venience and necessity. But the committee, after the hearing of the parties by their evidence and counsel had been closed, proceeded to lay out a highway as specified and defined in their report, and procured a surveyor to make a survey of the same in accordance with their lay-out, and did estimate the damages growing out of said lay-out, without further or addi-tional hearing with reference thereto. The map, profile and

Clark v. Town of Middlebury.

survey of the petitioners show the lines, courses and distances of the road prayed for by them; and the map and survey of the respondents show the lines, courses and distances of the road as actually laid out by the committee; and a comparison of said maps discloses whatever differences there may be, and said maps, profiles and surveys are made part of this finding and record.

Upon these facts the case was reserved for the advice of this court.

*C. B. Andrews* and *C. W. Gillette*, for the petitioners.

*C. R. Ingersoll* and *H. B. Munson*, for the respondents.

LOOMIS, J.   The objections to the acceptance of the report of the committee, urged in the argument for the respondents, are quite numerous, but all of them, though seemingly independent, may be determined by the answer we shall give to one question, namely—Is the highway as laid out by the committee in contemplation of law the same or a part of the same as that prayed for in the petition?

The jurisdictional question so prominent in the discussion hinges entirely on this.   It is of course undeniable that if the highway prayed for is wholly within one town the selectmen of the town must first be requested to lay it out and must refuse so to do, in order to give the Superior Court jurisdiction of an application for that purpose.   But in this case it is conceded that the selectmen were previously requested, and did wholly refuse to lay out the road asked for in the petition. This fact is distinctly alleged in the petition and as distinctly found by the court.   If therefore the committee laid out the road asked for, it must necessarily have been the same road which the selectmen on request refused to lay out.   It is always necessary that the road laid out should be the same or a part of the same as that mentioned in the application; and the question of identity here is simply the ordinary one, to be determined by the same rules that we should apply to a lay-out from town to town, where the application might be made directly to the Superior Court in the first instance.

What then are the rules by which this question is to be determined?

We think the identity of a highway described in an applica-tion for its lay-out should not be determined by the strict rules of pleading which obtain in describing and in proving the subject matter of litigation in other cases, where the slightest variance is often fatal; or, it may be more accurate to say that the wide difference in the nature of the matter in demand is to be considered in applying the rules of pleading and of variance.

The object of laying out a public highway is to accommo-date public travel—to meet the demands of common conve-nience and necessity. This can never depend on any great precision in the location of the way asked for. A deviation of a few rods one way or the other in a country road can be of no importance. The neighborhood, or the general locality, is all that the public demand can indicate. And the petition-ers, who represent the public, are not expected to know all the deviations from a proposed line which a critical examina-tion of the nature of the ground may require for the purposes of a judicious lay-out. We conclude then that the road as laid out need not be precisely identical with the one asked for as to its location; if it is substantially the same it is to be considered identical in law.

It has not been usual in petitions for new highways to locate the way except in a very general manner by the termini. But when the committee come to lay out the road asked for they are required by statute (General Statutes, p. 238, sec. 38,) to make a particular survey, to give the lay-out a precise location. This becomes necessary to fix the rights of adjoin-ing land-owners and the public; to determine just where the road may be wrought and the soil taken for that purpose. But if the court should make a strict and technical application of the rules of pleading as in other cases, the petition would either be held bad for its uncertainty and generality of description, or such a lay-out would be held variant from the description.

But the respondents further object that, as the petitioners

did not content themselves with the use of general words of description, but gave instead courses, distances and altitudes from actual survey, they have thus made, though unnecessarily, such survey matter of essential description, so that the most trivial deviation in either course, distance or altitude is fatal. This objection might prevail if the technical rules of pleading that obtain in other cases were applied in the same manner to an application for a highway, but for reasons already stated we think they should not be so applied. But let us test the principle insisted upon by the respondents by viewing it from another stand-point and apply it to the case in hand.

Suppose the committee had found that common convenience and necessity did not require the road prayed for, nor any part of it, and the report had been accepted and the petition dismissed, and afterwards a new petition had been brought describing the road asked for in the same language used by the committee in the lay-out we are considering; could not the respondents defeat the new petition by the plea of res adjudicata, upon the principle that the two highways described were substantially identical? It seems to us that such a defense must prevail. And here we have support from the decision of this court in *Terry* v. *The Town of Waterbury*, 35 Conn., 533, where the question was one of res adjudicata and the rule we have been contending for was laid down.

The route of the new petition in that case it was conceded was not precisely identical with, but was found substantially the same as the former one. CARPENTER, J., in giving the opinion said—"The question involved must be regarded as identical in both cases, to wit, the common convenience and necessity of a highway in that locality. A slight deviation of the route does not destroy its identity."

The termini are regarded by the law as the most distinctive marks of the identity of a highway. In this respect the lay-out by the committee is not variant from the petition; for the petition does not undertake to locate with precision the termini of either section of the highway prayed for. And as to the line or route between the termini, the question whether it is

substantially the same as that mentioned in the petition is really matter of fact rather than of law, and ought properly to have been found in terms by the court. It is not directly found, and we had some hesitation at first whether the case ought not to be remanded for more explicit finding in that respect. The court however, with the consent of the parties, has substituted for such a finding the following: " The map, profile and survey of the petitioners show the lines, courses and distances of the road prayed for by them, and the map and survey of the respondents show the lines, courses and distances of the road as actually laid out by the committee, and a comparison of said maps discloses whatever differences there may be, and said maps, profiles and surveys are made part of this finding and record." In strictness these maps and surveys are evidential facts and not facts themselves, yet as addressed to the eye they are more accurate than any mere words of description, and as the parties so desire we will accept them as facts and construe the finding accordingly. This course can do no injustice to the respondents, because the only foundation for the claim in the remonstrance that the road as laid out is variant from the petition, must be derived from an inspection of the maps referred to. The committee's report alone without the maps would defeat rather than sustain this claim, for after referring to and copying the description in the petition they say that they " find that this *last mentioned* highway is of common convenience and necessity," and then state that they " proceeded and did lay out *said highway*."

Accepting the maps and surveys as descriptive facts, it appears that the petitioners' route as surveyed contains in all ten courses, with an aggregate of 257 rods and 13 links of road ; while the road as laid out contains fourteen courses, with an aggregate distance of 268 rods and 16 links. The lines of the two surveys are in some instances nearly identical, then they cross each other at right angles, and at one point of farthest deviation the two lines are distant from each other above twelve rods. The termini are substantially the same. We think the variation referred to, especially in a country

road, could not possibly affect the question of common convenience and necessity, and that the location of the highway as laid out by the committee was substantially the same as the petition called for. And this view of the case will dispose also of the objection that the committee were guilty of improper conduct in hearing evidence as to the line contained in the petition and in establishing the line of lay-out, as they did, without further evidence or further notice to the parties.

The question whether the committee could lay out a part of the highway prayed for and not the whole, though argued anew in this case, has been repeatedly answered in the affirmative by the decisions of this court. The case of *The Towns of Windham and Chaplin* v. *Litchfield et al.*, 22 Conn., 226, though not precisely analogous to this, in effect conceded the principle. The petition was for a new highway from the town of Chaplin to Willimantic in the town of Windham. The commissioners did not lay out the entire road asked for, but two separate portions only, one of which lay wholly within the town of Windham and the other in Chaplin. The town of Windham remonstrated, but the report was accepted. Windham and Chaplin then brought a writ of error, one ground of which was, that as each section was laid entirely within one of the towns of Windham or Chaplin, the report itself showed no necessity of a road from town to town, and therefore the selectmen should have been first requested to lay it out, which was not done. It was held " that although the original application was for a road from town to town, yet the court was not so bound by it that they must lay out the whole road or dismiss the case altogether ; it was sufficient if the parts of the new road as laid should, when completed, form with other means of communication one continuous road from place to place."

In *Monroe et al.* v. *The Borough of Danbury*, 24 Conn., 199, a petition for a highway within the limits of the borough was brought to the County Court after the borough had commenced proceedings under its charter for the lay-out of a part of it. The petition was referred to the county commissioners, and before the commissioners acted the borough had com-

Clark *v.* Town of Middlebury.

pleted the lay-out of a part. The commissioners however went on and laid out the entire way petitioned for, covering the part laid out by the borough. The court rejected the report. It was held that the report should have been recommitted, because, although they could not proceed further as to that part of the road laid out by the borough, yet they might *lay out the remaining part.*

In *Pierce et al* v. *The Town of Southbury*, 29 Conn., 490, the committee made report that they found a certain part of the road prayed for was not required by common convenience and necessity, and were of opinion that that part of the petition should not be granted, but that they found a certain other portion ought to be laid out and therefore they laid it out. The report was accepted and the highway as laid established. The respondents brought the case up for review by motion in error, assigning as errors—1st. That the committee had not found any allegation proved or true, nor that the portion laid out was of common convenience and necessity. 2d. That they did not find, and it did not appear, that the highway surveyed and laid out by the committee was the highway prayed for or was within the limits of the petition. It was held that the record ought to show not only that common convenience and necessity required the new highway, but also that the highway laid out was the one, *or part of the one,* prayed for in the application. But it was held that the finding substantially covered these points.

If therefore the petition is to be construed as praying for one entire road, the cases cited clearly show that it was competent for the committee to lay out a part only.

In this case however it clearly appears, both from tne petition and the maps, that there are two distinct and separate sections of new highway asked for, separated from each other some thirteen hundred feet by an old highway, with distinct termini for each section, so that, if the question was a new one, there could be no reasonable ground for objecting to the lay-out of one of these sections.

But the respondents have made most strenuous efforts to distinguish the present case from all others previously decided,

upon the ground that the selectmen here had exclusive original jurisdiction; and to give force to the argument it is assumed that there is something very technical about this jurisdiction and that their powers are limited by the precise form of the request as made to them. When therefore it is shown to be competent for a committee to lay out a part of a highway asked for and reject the remainder, it is said to be true as to the committee but not as to the selectmen, who can have no such discretion. And when it is shown that a committee are not bound to lay out the road in the identical locality asked for, if they lay it substantially in the same place, it is said again that this may be true as to a committee, but that the selectmen have no discretion to deviate one jot or tittle from the precise courses and distances mentioned.

Is there any good reason in this state for such a distinction? Does the same language addressed to the selectmen, where they have, in the first instance, exclusive jurisdiction over the lay-out of a highway, mean less than it does when addressed to the court where it has exclusive jurisdiction? Or, does exclusive jurisdiction in the former case mean a more limited power for the lay-out of a highway than in the latter case?

Notwithstanding the support such distinctions may seem to have from some decisions cited by the respondents from the courts of other states, the only rational position, under any fair construction of our statutes, is that the powers and discretion of selectmen to lay out a part of a highway asked for, or to deviate from the line indicated in the petition, are precisely the same as belong to the court under similar petitions. The statutes of this state (Gen. Statutes, p. 235, sec. 28,) give the selectmen full and unqualified power and discretion "to lay out *all necessary highways*," and when by statute, (id., p. 237, sec. 37,) they refuse to lay out "*any necessary highway*," any person may prefer his application for that purpose to the Superior Court. If therefore, upon a petition like the present for two distinct sections of new highway, they have refused to act at all, it is absurdly technical to hold that it does not involve a refusal to lay either section as well as both. The greater must include the less, and if one of the sections

only is required by common convenience and necessity, then the selectmen have refused to lay out "a necessary highway," so as to confer jurisdiction on the Superior Court; and so it is where selectmen refuse to lay out a highway where the petition indicates the route; it involves a refusal to lay out a necessary highway on a route substantially identical.

We advise that the remonstrance be overruled and the report of the committee accepted.

In this opinion the other judges concurred.